# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00322-GCM

| | |
|---|---|
| FELICIA M. BELK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> ) <br> Defendants. ) <br> ) | **ORDER** |

**THIS MATTER COMES** before this Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Commissioner's Motion for Summary Judgment (Doc. No 13). Having carefully considered the motions and reviewed the record, the Court enters the following findings, conclusions, and Order.

## I. BACKGROUND

The procedural history of this matter is as stated in the Commissioner's memorandum of law supporting the Commissioner's Motion for Summary Judgment.

The ALJ's findings relevant to this proceeding are as follows: Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 16). Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (*Id.*). Plaintiff has a combination of impairments that more than minimally affect her ability to perform work related activities and are thus considered to be "severe." (*Id.*). However, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17).

After consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> Occasional interaction with supervisors, the public, and coworkers; work that involves no constant changes in routine, no crisis situations, and no complex decision making; work in a non-production environment; work that involves unskilled tasks; and she should avoid concentrated exposure to hazards such as motorized machinery and unprotected heights and should avoid exposure to pollutants, fumes, etc.

(Tr. 19). The ALJ found in the fourth step that Plaintiff is unable to perform any past relevant work. (Tr. 30). Finally, at the fifth step, the ALJ concluded based on Plaintiff's limitations that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 31). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (*Id.*).

## II. STANDARD OF REVIEW

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

## III. DISCUSSION

On appeal, Plaintiff asserts the ALJ made three different errors in his decision: (1) the ALJ failed to identify apparent conflicts in the vocational witness's testimony with the Dictionary of Occupational Titles ("DOT") and obtain an explanation for those conflicts; (2) the ALJ failed to properly assess Plaintiff's mental RFC; and (3) the ALJ failed to properly weigh Dr. Johnson's opinions. The Court will address each assignment of error below.

### a. Apparent Conflicts with the DOT

Plaintiff first argues that the ALJ erred by not identifying and resolving apparent conflicts between the vocational witness's testimony and the DOT. Plaintiff claims there is an apparent conflict with all three jobs identified by the vocational witness.

The vocational witness identified three jobs a person with Plaintiff's limitations could perform: order caller (DOT number 209.667-014), ticket distributor (DOT number 221.667-010), and housekeeper (DOT number 323.687-014). Plaintiff argues that the vocational witness's testimony creates two apparent conflicts with the DOT: (1) these jobs require more than occasional interaction with supervisors, coworkers, and the public; and (2) these jobs require more than mere "unskilled tasks."

Social Security Ruling 00-4p states that an ALJ has "an affirmative responsibility to ask [a vocational expert] about any possible conflict between [his] evidence and . . . the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). However, the ALJ is required to do more than just ask if a conflict exists between the vocational witness's testimony and the DOT. The Fourth Circuit held that the "ALJ independently must identify conflicts between the expert's testimony and the [DOT]" and that merely asking the vocational witness if there were any conflicts was insufficient. *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015).

#### i. Occasional Interaction with Supervisors, Coworkers, and the Public

First, Plaintiff argues that the three jobs identified by the vocational witness create an apparent conflict with the DOT because she is limited to only occasional interaction with supervisors, coworkers, and the public. Plaintiff states that the DOT is silent as to the frequency of contact with others.[1] (Pl. Br. P. 7). However, the Plaintiff goes on to state that the Department of Labor replaced the DOT with a database known as the O*NET. According to Plaintiff, the descriptions of the three identified jobs found within the O*NET require high amounts of interaction with supervisors, coworkers, and the public. Plaintiff assigns error to the ALJ for not identifying that apparent conflict and receiving an adequate explanation from the vocational witness.

The Court finds that the ALJ did not err because there is no apparent conflict between the vocational witness's testimony and the DOT. First, the DOT's silence on an issue does not create an apparent conflict with the vocational witness's testimony on that issue. *Cf. Lusk v. Astrue*, No. 1:11-cv- 00196-MR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013) ("To the extent that the Plaintiff is arguing that the VE's testimony is in conflict with the DOT because the latter does not address whether the identified jobs allow for a sit/stand option, such argument must also fail."); *Cameron v. Colvin*, No. 1:12-cv-1352, 2015 WL 631172, at *8–9 (M.D.N.C. Feb. 12, 2015) (citing cases that follow the "well-reasoned rationale" that there is no conflict created by silence in the DOT), *report and recommendation adopted*, No. 1:12-cv-1352, 2015 WL 3580879 (M.D.N.C. June 5, 2015). Thus, to the extent Plaintiff argues that the DOT's silence creates an apparent conflict, that argument is without merit.

---

[1] The Commissioner contests this point, but because the case can be decided on other grounds, the Court will not decide that issue.

Plaintiff also argues that the Department of Labor replaced the DOT with the O*NET, meaning the ALJ should also compare the vocational witness's testimony to the O*NET to identify apparent conflicts. However, the Social Security Ruling that requires ALJs to identify apparent conflicts only requires the ALJs to identify those conflicts with the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Because the Social Security Ruling only requires the ALJ to identify apparent conflicts between the vocational witness's testimony and the DOT, the Plaintiff's reliance on the O*NET is misplaced. As such, the Court finds the ALJ did not err by relying upon the DOT.

### ii. Limitation to Unskilled Tasks

Plaintiff next argues that the ALJ erred by not recognizing an apparent conflict with the three jobs identified and Plaintiff's limitation to unskilled tasks. Again, Plaintiff relies upon the O*NET descriptions of the identified jobs which, according to Plaintiff, create an apparent conflict with the vocational witness's testimony. The ALJ was not required to identify apparent conflicts with the O*NET; rather, the ALJ's affirmative duty is to identify apparent conflicts between the vocational witness's testimony and the DOT. Here, there is no apparent conflict between the DOT and the testimony. As such, the Court finds the ALJ did not err by relying upon the DOT.

### b. Residual Functional Capacity Assessment

Plaintiff next argues that the ALJ did not determine Plaintiff's ability to stay on task in light of her moderate limitations in concentration, persistence, and pace, as required by *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). The Fourth Circuit in *Mascio* held that "[a]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). If a moderate limitation in concentration, persistence, and pace does not actually translate into a limitation in a claimant's

ability to work, the ALJ may limit the claimant to merely simple, routine tasks or unskilled work, but must explain why a further limitation is not needed. *Id.* But if the limitation does impact the claimant's ability to work, then the ALJ must go further and include a limitation that reflects the claimant's "ability to stay on task." *Id.*; *see also Grant v. Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) ("[W]hen an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the 'staying on task' aspect of CPP-related deficits . . . or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding 'staying on task.'").

The ALJ met the requirements of *Mascio* in this case. In addition to limiting Plaintiff to unskilled tasks, the ALJ also limited the Plaintiff to occasional interaction with supervisors, coworkers, and the public; no constant changes in routine; no complex decision-making; and work in a nonproduction environment. These limitations go well beyond simply limiting Plaintiff to simple, routine tasks or unskilled work. Rather, the limitations directly focus on Plaintiff's concentration, pace, and persistence as required by *Mascio*. Thus, the Court finds the ALJ provided an adequate RFC to meet the standards of *Mascio*.

c. **Dr. Johnson's Opinion**

Plaintiff next argues that the ALJ did not provide a legally sufficient reason to give little weight to Dr. Johnson's opinion. Dr. Johnson examined Plaintiff one time in-person in order to create her opinion. Dr. Johnson provided several opinions that all pointed to Plaintiff being disabled. The ALJ stated that he gave "little weight" to Dr. Johnson's opinions.

Plaintiff argues that the ALJ failed to provide legally sufficient justification for giving little weight to the physician's opinion who actually examined Plaintiff. The ALJ stated that one reason he gave little weight to Dr. Johnson's opinion was because Dr. Johnson only examined the Plaintiff

6

on one occasion. Federal Regulations specifically allow this practice. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2) (explaining that the agency will give more or less weight to an opinion depending on the length, nature, and extent of the treatment relationship and the frequency of examination). Thus, the ALJ did not commit error simply by giving less weight to the opinion of a doctor who only saw the Plaintiff once.

Plaintiff next argues that the ALJ erred by speculating as to how Dr. Johnson came to her opinions. The ALJ stated that he gave little weight to the opinion of Dr. Johnson because Dr. Johnson's opinions relied heavily on Plaintiff's subjective assertions. Plaintiff relies upon *Aurand* out of the Seventh Circuit for the proposition that psychological exams inherently require reliance upon patient's reports because "there is no blood test for bipolar disorder." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016). Plaintiff goes on to argue that the ALJ, as a lay person, is not qualified to make his own determinations from raw medical data. *See Nguyen v. Charter*, 172 F.3d 31, 35 (1st Cir. 1999) (supporting the proposition that ALJs are unqualified to interpret raw medical data). However, the Fourth Circuit has held that an ALJ may ascribe little weight to the opinion of a treating physician if the opinion is based on the reports of the patient without "sufficient evidence to substantiate their claims." *Owen v. Colvin* No. 1:15-cv-00115-MOC, 2016 WL 4373702, at *7 (W.D.N.C. Aug. 15, 2016) (citing *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)). The ALJ explained that he gave little weight to Dr. Johnson's opinion because there were few objective measurements to support the subjective complaints of Plaintiff. The ALJ's discussion of Dr. Johnson's opinion and the reasons for ascribing little weight to that opinion are legally sufficient. As such, the Court finds the ALJ did not err by giving little weight to the opinion of Dr. Johnson.

Plaintiff also argues that the ALJ further erred by assigning more weight to the opinion of the state agency psychological consultants without adequate explanation. This argument is without merit. The ALJ explained that he gave great weight to the opinion of the state agency consultants because they aligned with the record which documented several instances of noncompliance on the part of the Plaintiff. Importantly, however, the ALJ went on to provide further limitations for Plaintiff than recommended by the state agency consultants citing specific instances of hospitalization as the reason for the change. Thus, the Court finds the ALJ properly supported his decision to give great weight to the testimony of the state agency consultants.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**, and the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act is **AFFIRMED**.

**SO ORDERED**.

Signed: November 28, 2018

Graham C. Mullen
United States District Judge